Benjamin Heikali SBN 307466
Email: bheikali@faruqilaw.com
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885

Richard W. Gonnello (*pro hac vice*)
Katherine M. Lenahan (*pro hac vice*)
Sherief Morsy (*pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
         klenahan@faruqilaw.com
         smorsy@faruqilaw.com

*Attorneys for Lead Plaintiff Troy Larkin*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY LARKIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOPRO, INC., NICHOLAS D. WOODMAN, BRIAN MCGEE and ANTHONY BATES,<br><br>Defendants | Case No. 4:16-CV-06654-CW<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**CLASS ACTION**<br><br>Date:        April 9, 2019<br>Time:       2:30 p.m.<br>Judge:      The Hon. Claudia Wilken<br><br>Date Action Filed:   November 16, 2016 |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION AND STATEMENT OF COURT ACTION SOUGHT .......... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

    A.    Description of the Action ............................................................ 2

    B.    The Proposed Settlement ............................................................ 3

ARGUMENT ............................................................................................. 5

I.    The Settlement Warrants Preliminary Approval .......................................... 5

    A.    The Proposed Settlement Is The Product Of Arm's-Length Negotiations ....................... 6

    B.    The Proposed Settlement Has No Obvious Deficiencies ................................... 7

    C.    The Settlement Does Not Unjustly Favor Any Settlement Class Members ................... 9

    D.    The Proposed Settlement Is Within The Range Of Reasonableness ........................... 10

II.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ........................ 11

    A.    The Proposed Settlement Class Meets The Requirements Of Rule 23(a) ..................... 12

        1.    The Settlement Class Is Sufficiently Numerous ................................... 12

        2.    There Are Common Questions of Law and Fact ................................... 12

        3.    The Proposed Class Representative's Claims Are Typical ................................ 13

        4.    The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Settlement Class ................................................ 13

    B.    The Proposed Settlement Class Satisfies Rule 23(b)(3) ................................. 14

        1.    Common Questions of Law and Fact Predominate Over Questions Affecting Only Individual Members of the Class ................................. 14

        2.    A Class Action Is Superior to Other Methods of Adjudication ........................... 15

    C.    The Faruqi Firm Should Be Appointed Class Counsel ................................... 15

III.    THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED ..................... 16

IV.    THE PROPOSED SCHEDULE OF EVENTS ............................................... 19

CONCLUSION ........................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Altamirano v. Shaw Indus., Inc.*,
    2015 WL 4512372 (N.D. Cal. July 24, 2015) ...................................................... 9

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) .......................................................................................... 15

*In re Banc of Cal. Sec. Litig.*,
    326 F.R.D. 640 (C.D. Cal. 2018) ...................................................................... 12

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ............................................................................................ 8

*Booth v. Strategic Realty Trust, Inc.*,
    2015 WL 3957746 (N.D. Cal. June 28, 2015) .................................................. 12

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
    2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ...................................................... 15

*In re Celera Corp. Sec. Litig.*,
    2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) .................................................... 5

*Chao v. Aurora Loan Servs., LLC*,
    2014 WL 4421308 (N.D. Cal. Sept. 5, 2014) .................................................... 14

*In re Dynavax Techs. Corp. Sec. Litig.*,
    No. 3:13-cv-02796-CRB (N.D. Cal.), ECF No. 144 .......................................... 19

*In re Ebix Inc. Sec. Litig.*,
    No 1:11-CV-02400-RWS (N.D. Ga. Jan. 19, 2018), ECF No. 95 ....................... 8

*Epstein v. MCA, Inc.*,
    179 F.3d 641 (9th Cir. 1999) ............................................................................ 16

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) ............................................................................ 5

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................................... 13

*Harris v. Vector Mktg. Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................................... 6

*Hatamian, et al. v. Advanced Micro Devices, Inc., et al.*,
    No. 14-cv-00226-YGR (JSC) (N.D. Cal.), ECF No. 227 .................................. 18

*Hendricks v. StarKist Co.*,
   2015 WL 4498083 (N.D. Cal. July 23, 2015) ...................................................... 9, 11

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................................. 5

*Hofmann v. Dutch LLC*,
   317 F.R.D. 566 (S.D. Cal. 2016) ............................................................................... 8

*In re Magma Design Automation, Inc. Sec. Litig.*,
   2007 WL 2344992 (N.D. Cal. Aug. 16, 2007) ......................................................... 12

*McCabe v. Six Continents Hotels, Inc.*,
   2015 WL 3990915 (N.D. Cal. June 30, 2015) ............................................................ 7

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................... 9

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .................................................................................... 16

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ................................................................................................ 16

*In re Portal Software, Inc. Sec. Litig.*,
   2007 WL 1991529 (N.D. Cal. June 30, 2007) ......................................................... 17

*Rihn v. Acadia Pharms. Inc.*,
   2018 WL 513448 (S.D. Cal. Jan. 22, 2018) ............................................................... 8

*Rihn v. Acadia Pharms. Inc.*,
   No. 3:15-cv-00575-BTM-DHB (S.D. Cal.), ECF No. 71 ......................................... 19

*Rubio-Delgado v. Aerotek, Inc.*,
   2015 WL 3623627 (N.D. Cal. June 10, 2015) ......................................................... 11

*Ruch v. AM Retail Grp., Inc.*,
   2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) ................................................. 7, 9, 10

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................................... 6

*Shapiro v. Matrixx Initiatives Inc., et al.*,
   No. CV-09-01479-PHX-ROS (D. Ariz. Jan. 3, 2017), ECF No. 113 ........................ 8

*Thomas v. MagnaChip Semiconductor, Inc.*,
   2016 WL 1394278 (N.D. Cal. Apr. 7, 2016) ............................................................. 8

*In re Verisign, Inc. Sec. Litig.*,
   2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) .................................................... 12, 15

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................................................................. 8

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...................................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
   2016 WL 4010049 (N.D. Cal. July 26, 2016) ................................................ 6, 7, 11, 12

*In re Zynga Inc. Sec. Litig.*,
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ......................................................*passim*

**Statutes**

15 U.S.C. §78u-4(a)(4) ...................................................................................................... 9

15 U.S.C. §78u-4(a)(7) ..................................................................................................... 16

**Other Authorities**

Fed. R. Civ. P. 23 ......................................................................................................*passim*

Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action
   Litigation: 2017 Full-Year Review* (NERA 2018) ......................................................... 11

**NOTICE OF MOTION AND MOTION AND STATEMENT OF COURT ACTION SOUGHT**

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on April 9, 2019 at 2:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Claudia Wilken, Lead Plaintiff Troy Larkin ("Lead Plaintiff") will move this Court for an order: (i) preliminarily approving the proposed settlement of this action; (ii) preliminarily certifying the proposed class for purposes of settlement; (iii) approving the form and manner of giving notice of the proposed settlement to the class; and (iv) scheduling a final approval hearing before the Court.[1]   The grounds for this motion are that the proposed settlement is within the range of what could be found to be fair, reasonable, and adequate so that notice of its terms may be disseminated to members of the class and a hearing for final approval of the proposed settlement may be scheduled.

This motion is based upon the Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Stipulation filed simultaneously herewith, the pleadings and records on file in this action, and other such matters and argument as the Court may consider at the hearing of this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiff, on behalf of himself and the putative Class, and defendants GoPro, Inc. ("GoPro"), Nicholas Woodman ("Woodman"), Brian McGee ("McGee"), and Anthony Bates ("Bates" ) (collectively with GoPro, "Defendants") have reached a proposed settlement for $6,750,000 that, if approved, will resolve all claims in the above-captioned action (the "Action").   Lead Plaintiff respectfully submits this memorandum of law in support of his motion and requests that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order").   The Preliminary Approval Order will, among other things: (1) preliminarily approve the settlement on the terms set forth in the Stipulation; (2) certify the Class for settlement purposes; (3) appoint Lead Plaintiff as Class Representative and Faruqi & Faruqi, LLP (the "Faruqi Firm") as Class Counsel; (4) approve the form and manner of giving notice of the settlement to the

---

[1]   All capitalized terms that are not otherwise defined herein shall have the same meaning as those provided in the Stipulation of Settlement dated as of February 14, 2019 (the "Stipulation"), filed concurrently herewith.   All quotations and citations are omitted unless otherwise noted.

1    Class; and (5) set a date for the Settlement Hearing.

2                         **FACTUAL AND PROCEDURAL BACKGROUND**

3    **A.    Description of the Action**

4            On November 16, 2016, plaintiff Anton Bielousov filed the initial class action complaint in the

5    United States District Court for the Northern District of California naming GoPro and Woodman as

6    defendants and alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934

7    ("Exchange Act"), 15 U.S.C. §§78j(b), 78t(a), and Securities and Exchange Commission ("SEC") Rule

8    10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder.  *See* ECF No. 1.  On February 6, 2017, Senior

9    District Judge Claudia Wilken appointed Troy Larkin as Lead Plaintiff and approved his selection of

10   Faruqi & Faruqi, LLP as Lead Counsel.  ECF No. 47.  Mr. Larkin filed the amended complaint ("AC")

11   (ECF No. 51) on March 14, 2017, adding McGee and Bates as defendants.

12           The AC alleges that during the Class Period, Defendants made false and/or misleading

13   statements and opinions about, *inter alia*, GoPro's revenue and profitability estimates, the Karma

14   quadcopter drone, and the HERO5 cameras.  *See* ¶¶96, 98, 100, 111, 114, 116, 118.[2]  Meanwhile, the

15   AC alleges Defendants failed to disclose, *inter alia*, that both the HERO5 and Karma product lines

16   suffered from production issues and supply shortages that undermined GoPro's revenue and

17   profitability estimates, ¶¶70-83, that the only retailer selling the Karma drone—if any retailer was

18   selling it at all—was GoPro's lone U.S. third party retailer BestBuy, ¶80, and that the Karma drone

19   suffered from dangerous design defects that would result in its recall, ¶¶67-69, 88-89.  As alleged in

20   the AC, the true facts concealed by Defendants came out gradually over time in disclosures on October

21   23-24, 2016, November 3, 2016, November 8, 2016, and February 2, 2017, each of which led to a

22   decline in the price of GoPro common stock.  *See, e.g.*, ¶¶158-66.

23           On April 13, 2017, Defendants filed a motion to dismiss the AC (ECF No. 57), which the Court

24   denied in an order filed on July 26, 2017 ("MTD Order") (ECF No. 74).  Pursuant to the MTD Order,

25   Lead Plaintiff filed the Second Amended Complaint ("SAC")—the operative complaint in this

26   Action—on August 4, 2017, revising the caption to reflect the newly added defendants.  ECF No. 79.

27   On September 8, 2017, Defendants filed their Answer to the SAC.  *See* ECF No. 82.

28   _____

[2]        All "¶___" references are to the AC unless otherwise specified.

Shortly thereafter, the Court entered an order setting forth the schedule for the action that reflected the parties' agreement to divide discovery into two phases, "Phase I" and "Phase II." ECF No. 90 at 1. Phase I was scheduled to end and Phase II was scheduled to begin on May 10, 2018. *Id.* After agreeing on the categories of information sought during Phase I, the parties proceeded to exchange discovery within those categories. During Phase II of discovery, Lead Plaintiff served formal discovery on Defendants and filed a class certification motion. ECF No. 105. The parties agreed to mediate and filed a stipulation seeking to temporarily stay the proceedings, with the exception of Lead Plaintiff's deposition and Defendants' class certification opposition. ECF No. 109. The Court approved the stay on July 12, 2018 (ECF No. 110), and thereafter terminated the class certification motion (ECF No. 111). On September 11, 2018, the parties engaged in an in-person mediation before Robert Meyer, Esq., a highly experienced securities litigation mediator. *See* ECF No. 112. In the weeks following the session, the parties continued to negotiate with Mr. Meyer's assistance and reached an agreement in principle to settle the claims against Defendants. The parties then worked over the course of several months to finalize the terms of the Stipulation.

**B.      The Proposed Settlement**

Briefly, the settlement provides that Defendants will cause to be paid $6,750,000, in cash, to settle all claims in the Action. In exchange for the payment of the Settlement Amount, Lead Plaintiff and the settlement Class will release all Released Claims against the Released Defendant Parties.

No litigation class has been certified in this Action, but the settlement Class definition and the claims to be released in the settlement are substantially similar to those in the operative complaint, as explained further in §I.B, *infra.*

It is currently estimated that if Class Members submit claims for 100% of the shares eligible for distribution, the average distribution per share of common stock will be approximately $0.14 before deduction of Court-approved fees and expenses.[3] As further explained below, this is approximately 5.23% of the maximum damages that Lead Plaintiff's expert estimated the Class would receive, before deduction of Court-approved fees and expenses, if Lead Plaintiff were to prevail on all of its claims. *See* §I.D, *infra.* This is much higher than the median percentage of 2.6% for securities class actions

---

[3]      Additional details about Class Members' expected response rate are set forth in §III, below.

1   settlements in 2017.  *Id.*

2   Pursuant to the settlement Stipulation, after Court-approved fees and expenses and other costs

3   of settlement are paid, the Net Settlement Fund will be distributed to Authorized Claimants (*i.e.*, Class

4   Members whose claims for recovery have been allowed pursuant to the Stipulation's terms), in

5   accordance with the Plan of Allocation described in the Notice of Pendency and Proposed Settlement

6   of Class Action ("Notice").  *See, e.g.*, Stipulation ¶5.3; Stipulation, Ex. A-1 (the Notice) at 14-19.  The

7   Plan of Allocation was drafted with the assistance of a consulting damages expert and reflects

8   causation and damages theories that are consistent with the applicable federal securities laws.  *See*

9   Stipulation, Ex. A-1 (the Notice) at 14-15.  It seeks to equitably distribute the Net Settlement Fund

10  among Authorized Claimants based on their respective alleged economic losses as a result of the

11  alleged fraud.  *See id.*  Class Members' recovery will depend on several factors, including when and at

12  what price they purchased GoPro common stock and when such stock was sold.  *See id.*

13  No portion of the Settlement Fund shall revert to any defendant after the Effective Date.  *See*

14  Stipulation ¶2.9.  Should any amount below $5,000 remain in the Net Settlement Fund after all feasible

15  distributions are made to Authorized Claimants, it will be donated to the Investor Protection Trust

16  ("IPT"), Stipulation ¶5.6, which is an appropriate *cy pres* recipient for the reasons described further

17  herein.  *See* §I.B, *infra*.

18  Lead Plaintiff entered into this settlement with a full and comprehensive understanding of the

19  strengths and weaknesses of the SAC's claims, which are based on Lead Counsel's extensive

20  experience with securities litigation, the investigation performed in connection with the filing of the

21  AC, the legal research conducted in connection with the motion to dismiss and the motion for class

22  certification, the numerous discovery documents reviewed by Lead Counsel, and consultation with

23  experts.  Lead Plaintiff believes that the claims asserted in this Action have merit and that the evidence

24  developed to date supports the claims.  Lead Plaintiff and Lead Counsel recognize, however, the

25  expense and length of continued proceedings necessary to prosecute the Action through trial and

26  possible appeals, as well as the uncertain outcome of any litigation, especially in complex actions such

27  as this.  Lead Plaintiff and Lead Counsel also are mindful of the inherent problems of proof under and

28  possible defenses to the securities law violations asserted in the Action.  In light of these obstacles,

1   Lead Plaintiff and Lead Counsel believe the settlement set forth in the Stipulation confers substantial

2   benefits upon, and thus is in the best interests of, the Class.

3          Although it is unclear whether the notice provisions of the Class Action Fairness Act of 2005

4   ("CAFA"), 28 U.S.C. §1715, were intended to apply to class actions brought pursuant to the federal

5   securities laws, Defendants will provide CAFA notice.  Within ten days of the filing of the Stipulation

6   with the Court, Defendants will cause notice of the proposed settlement to be served upon the

7   appropriate State official of each State in which a Class Member resides and the Attorney General of

8   the United States in compliance with CAFA's requirements.

9                                        **ARGUMENT**

10  **I.    The Settlement Warrants Preliminary Approval**[4]

11         Fed. R. Civ. P. 23(e) provides that any compromise of a class action must receive court

12  approval.  The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where

13  complex class action litigation is concerned."  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2

14  (C.D. Cal. June 10, 2005).  "[T]here is an overriding public interest in settling and quieting litigation.

15  This is particularly true in class action suits. . . . "  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th

16  Cir. 1989).

17         The settlement approval process involves two steps: "(1) preliminary approval of the

18  settlement; and (2) final approval of the settlement at a fairness hearing following notice to the class."

19  *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015).  "Preliminary

20  approval is appropriate where the proposed settlement is neither illegal nor collusive and is within the

21  range of possible approval."  *Id.*  Thus, at this juncture, the court should preliminarily approve a

22  settlement and notice to the class if "[1] the proposed settlement appears to be the product of serious,

23  informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant

24  preferential treatment to class representatives or segments of the class, [4] and falls within the range of

25  possible approval."  *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015).

26  ─────────────────
    [4]      To help the Court evaluate the proposed settlement, Exhibit 1 submitted herewith contains a
27  chart comparing the proposed settlement to one of Lead Counsel's past comparable settlements, as
    suggested by the Northern District of California's Procedural Guidance for Class Action Settlements
28  ("Procedural Guidance").  Exhibits 1-3 referenced herein are annexed to the declaration of Katherine
    M. Lenahan, submitted herewith.

**A.      The Proposed Settlement Is The Product Of Arm's-Length Negotiations**

The first factor considers the method by which the parties arrived at the settlement.  "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."  *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).  Here, the parties engaged in a mediation session after, *inter alia*, (1) Lead Counsel conducted a lengthy investigation into the facts alleged in the Action; (2) Lead Counsel drafted an amended complaint; (3) Defendants and Lead Plaintiff engaged in motion to dismiss briefing; (4) Defendants filed an Answer to the SAC; (5) Defendants and Lead Plaintiff exchanged discovery requests; (6) Lead Counsel reviewed thousands of pages of documents from Defendants; (7) Lead Plaintiff filed a motion for class certification; and (8) Defendants reviewed documents produced by Lead Plaintiff and took Lead Plaintiff's deposition.  Thus, the parties engaged in negotiations with a comprehensive understanding of the strengths and weaknesses of their positions and the procedural hurdles facing this Action.  *See Zynga*, 2015 WL 6471171, at *8 ("For the parties to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value.").

The negotiations first took place in a formal, in-person session with the assistance of Mr. Meyer, a well-respected mediator with significant experience mediating securities fraud class actions. *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); ECF No. 112.  The parties vigorously debated their positions during the mediation.  Over the next few weeks, the parties continued to negotiate with the help of Mr. Meyer and were eventually able to reach a resolution.

Furthermore, counsel is experienced in this type of litigation.  Lead Counsel is a nationally-recognized law firm with substantial experience prosecuting securities class actions.  *See* Ex. 2. Additionally, Defendants' Counsel, Fenwick & West, LLP, is renowned for its securities litigation practice.  Courts in this District have found that where a settlement is "the result of arm's-length negotiations by experienced Class Counsel[,] . . . [it] is entitled to an initial presumption of fairness." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 2016 WL 4010049,

1    at *14 (N.D. Cal. July 26, 2016).  Having settled numerous securities class actions, Lead Counsel

2    believes that the terms of the settlement are fair, adequate, and reasonable.

3    **B.      The Proposed Settlement Has No Obvious Deficiencies**

4    The Court must next consider whether the proposed settlement has any obvious deficiencies.

5    Courts often look at the class definition, the scope of the release, the *cy pres* beneficiaries, and whether

6    the requested attorneys' fees are reasonable.  *See McCabe v. Six Continents Hotels, Inc.*, 2015 WL

7    3990915, at *8-9 (N.D. Cal. June 30, 2015).  The proposed settlement meets all four criteria.

8    Here, the Class appropriately includes all investors who purchased common stock during the

9    time in which Defendants were purportedly committing securities fraud and who allege to have been

10   damaged as a result.  The settlement Class definition is nearly identical to that alleged in the SAC and

11   proposed in Lead Plaintiff's class certification motion, with the only difference being the description of

12   those excluded from the Class.  Those excluded from the settlement Class are described with greater

13   specificity in the Stipulation than in the SAC.[5]

14   Next, the Released Claims are narrow in scope and differ only slightly from the SAC's claims

15   in that the Released Claims include "Unknown Claims," claims that ***could have*** been brought, and

16   claims that "arise out of, are based upon, or relate in any way to" the "purchase, ***acquisition, sale or***

17   ***disposition*** of GoPro common stock during the Class Period."  Stipulation ¶1.24 (emphasis added).

18   Thus, the settlement releases only those claims against the Released Defendant Parties that are "based

19   on the same factual predicate as the underlying claims in this case." *Ruch v. AM Retail Grp., Inc.*, 2016

20   WL 1161453, at *11 (N.D. Cal. Mar. 24, 2016).  "Such a narrow release warrants preliminary

21   approval." *Id.*

22

23   [5]     Lead Plaintiff's SAC and class certification motion exclude from the class, "the Defendants[,]"
     "members of their immediate families, any firm, trust, partnership, corporation, officer, director or
24   other individual or entity in which a Defendant has a controlling interest or which is related to or
     affiliated with any of the Defendants, and the legal representatives, heirs, successors-in-interest or
25   assigns of such excluded persons." SAC ¶151; ECF No. 105 (class certification motion) at 1.  The
     Stipulation is more specific, providing as follows: "Excluded from the Class are (i) the Defendants; (ii)
26   members of the immediate families of any Individual Defendant; (iii) any firm, trust, partnership,
     corporation, or entity in which a Defendant or an immediate family member of any Individual
27   Defendant has a controlling interest; (iv) the directors and officers of GoPro at all relevant times; and
     (v) the legal representatives, heirs, successors-in-interest or assigns of such excluded persons.  Also
28   excluded from the Class are those Persons who timely and validly request exclusion from the Class."
     Stipulation ¶1.3.

7

Moreover, the proposed *cy pres* beneficiary, the Investor Protection Trust, or IPT, is an appropriate recipient for any unclaimed or non-distributable funds left in the Net Settlement Fund.  *See* Stipulation ¶5.6.  The Ninth Circuit allows "a *cy pres* distribution of unclaimed class action settlement funds only if it bears 'a substantial nexus to the interests of the class members[.]'" *Thomas v. MagnaChip Semiconductor, Inc.*, 2016 WL 1394278, at *8 (N.D. Cal. Apr. 7, 2016) (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012)).  "'[C]y pres* distribution must be guided by (1) the objectives of the underlying statutes and (2) the interests of the silent class members.'" *Hofmann v. Dutch LLC*, 317 F.R.D. 566, 577 (S.D. Cal. 2016) (quoting *Nachshin v. AOL*, 663 F.3d 1034, 1040 (9th Cir. 2011)).  IPT is a 501(c)(3) non-profit organization that serves as an independent source of non-commercial investor education at the state and national level.  *See* Investor Protection Trust, About IPT, http://www.investorprotection.org/ipt-activities/?fa=about (last visited Feb. 13, 2019); Investor Protection Trust, IPT Financials, http://www.investorprotection.org/ipt-activities/?fa=financials (last visited Feb. 13, 2019).  As this action was brought under the Exchange Act, which was enacted "to protect investors against manipulation of stock prices[,]" *Basic Inc. v. Levinson*, 485 U.S. 224, 230 (1988), on behalf of a Class that has members nationwide, IPT is an appropriate potential *cy pres* beneficiary.  *See Rihn v. Acadia Pharms. Inc.*, 2018 WL 513448, at *4 (S.D. Cal. Jan. 22, 2018) (finding IPT to be an appropriate *cy pres* recipient in a securities fraud class action).[6]

Lastly, Lead Counsel is requesting attorneys' fees not to exceed 25% of the Settlement Fund and up to $250,000 in litigation expenses.  "In common fund cases such as this, [the Ninth Circuit has] established twenty-five percent (25%) of the common fund as the benchmark award for attorney fees." *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012).  Although attorney's fees will not be approved at this stage of the litigation, this District's Procedural Guidance suggests that class counsel include information about their lodestar calculation in the preliminary

---

[6]    Lead Counsel does not have a relationship with IPT, but it has successfully proposed IPT as a *cy pres* beneficiary for unclaimed or non-distributable funds in other securities fraud class actions in which it served as Lead or Co-Lead Counsel because the organization fulfills the requirements for *cy pres* beneficiaries.  *See, e.g., Acadia*, 2018 WL 513448, at *4; *In re Ebix Inc. Sec. Litig.*, No 1:11-CV-02400-RWS (N.D. Ga. Jan. 19, 2018), ECF No. 95; *Shapiro v. Matrixx Initiatives Inc., et al.*, No. CV-09-01479-PHX-ROS (D. Ariz. Jan. 3, 2017), ECF No. 113.

8

approval motion.  A "[c]alculation of the lodestar, which measures the lawyers' investment of time in

the litigation, provides a check on the reasonableness of the percentage award."  *Vizcaino v. Microsoft*

*Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).  To date, Lead Counsel has expended a total of 2,938.55

hours over the course of approximately two years of litigation, resulting in a lodestar of $1,528,458.75.

When compared to the fee of approximately $1,687,500 (25% of the Settlement Fund) requested by

Lead Counsel, this lodestar results in a multiplier of approximately 1.1.[7]  Courts in this Circuit often

approve fees that result in lodestar multipliers "ranging between 1 and 4."  *In re Omnivision Techs.,*

*Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008); *Vizcaino*, 290 F.3d at 1051 (approving a fee

representing a multiplier of 3.65).  Lead Counsel respectfully submits that the requested award is

reasonable and should not weigh against preliminary approval.  *See Ruch*, 2016 WL 1161453, at *12.

### C.    The Settlement Does Not Unjustly Favor Any Settlement Class Members

Under the third factor, the Court examines whether the settlement grants preferential treatment

to any Class Member.  Here, Lead Counsel enlisted the help of a consulting damages expert to prepare

a Plan of Allocation that is designed to distribute a *pro rata* share of the Net Settlement Fund to

Authorized Claimants based upon their claimed losses.  Since the "[P]lan of [A]llocation submitted to

the Court compensates class members in a manner generally proportionate to the harm they suffered on

account of [the] alleged misconduct[,]" this factor supports approval.  *Altamirano v. Shaw Indus., Inc.*,

2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015).

While Lead Plaintiff will receive a distribution from the Net Settlement Fund in accordance

with the Plan of Allocation, he may also seek award of up to $10,000 for his reasonable time and

expenses as a result of the activities related to his representation of the Class, as authorized by the

PSLRA.  *See* 15 U.S.C. §78u-4(a)(4).  "The Ninth Circuit has recognized that service awards to named

plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable."

*Hendricks v. StarKist Co.*, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015).  Lead Plaintiff devoted

over 80 hours of time to this action.  In addition to attending numerous in person meetings at Lead

Counsel's offices, Lead Plaintiff frequently communicated with Lead Counsel by phone and email

---

[7]    Lead Counsel will provide a detailed lodestar report with its motion for an award of attorneys' fees and reimbursement of expenses, which it anticipates filing pursuant to the proposed schedule of events set forth in §IV below.

over this Action's approximately two-year span to discuss all aspects of the case.  Lead Plaintiff was careful to schedule his personal and business travel around the litigation schedule, making himself available to: review drafts of documents prior to filing; answer numerous interrogatories from Defendants; produce necessary materials to Lead Counsel to respond to Defendants' numerous document requests; prepare for and attend his deposition in San Francisco; and evaluate the pros and cons for the Class of settling or continuing to litigate the Action.  Lead Plaintiff plans to support his request for an award at the final approval stage of the litigation with a declaration attesting to the amount of time he devoted to the Action and any reasonable expenses he personally incurred in representing the Class.

### D.     The Proposed Settlement Is Within The Range Of Reasonableness

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Zynga*, 2015 WL 6471171, at *10.  Thus, the Court may preview the factors that ultimately inform final approval:  (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the experience and views of counsel; (6) the presence of a governmental participant; and (7) the reaction of the class members to the proposed settlement.  *See Ruch*, 2016 WL 1161453, at *13.

Here, all of the factors applicable to this Action support preliminary approval.  If the Action were to continue, Lead Plaintiff would face numerous obstacles and risks.  While Lead Plaintiff has always believed that his positions have merit, Defendants have raised numerous challenges and adamantly deny any wrongdoing.  Defendants' positions might prevail on summary judgment, or the Court might deny class certification.  If the Action were to survive those hurdles, the outcome of trial would involve considerable costs and a significant investment of time by the parties and their respective counsel and would burden the Court's resources.  In contrast to these risks and challenges, the Settlement provides an immediate and certain benefit to the Class.

In addition to providing the Class with a prompt recovery, Lead Plaintiff submits that the Settlement Amount is an excellent result, constituting a material percentage of the likely provable

damages suffered by the Class.  It is currently estimated that if Class Members submit claims for 100% of the shares eligible for distribution, the average distribution per share of common stock will be approximately $0.14 before deduction of Court-approved fees and expenses.  If Lead Plaintiff were to prevail on each of the claims in the SAC at trial, the damages per share of common stock would be approximately $2.77.   The Settlement Amount is 5.23% of the maximum damages Lead Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged fraudulent activity.  This is much higher than the median ratio of settlement amounts to investor losses for 2017, which NERA Economic Consulting determined was 2.6%.  *See* Ex. 3 at 38, Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* (NERA 2018).  As one court in this District noted, "[a]lthough the proposed settlement is only a small percentage of the total expected recovery at trial, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Rubio-Delgado v. Aerotek, Inc.*, 2015 WL 3623627, at *9 (N.D. Cal. June 10, 2015).

In regard to the other factors, as set forth more fully above, the Settlement was reached after more than two years of hard-fought litigation and is supported by experienced counsel.  Finally, there is no governmental entity involved and notice has not yet been distributed to the Class, so these factors are not relevant.  *See Hendricks*, 2015 WL 4498083, at *7 (finding that the settlement agreement fell "within the range appropriate for preliminary approval" even though no governmental entity was involved).  Thus, the settlement is within the range of possible approval and warrants preliminary approval to permit Class Members to at least consider the settlement's terms.

## II.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Lead Plaintiff seeks approval of the following settlement Class: "all Persons and entities who purchased GoPro common stock between September 19, 2016 and November 8, 2016, inclusive, and were damaged thereby."  *See* Stipulation ¶1.3.  The scope of this Class is nearly identical to that alleged in the SAC and Lead Plaintiff's class certification motion, except for minor differences in the description of those who are excluded from the Class.  *See* §I.B, *supra*.  "[W]here, as here, the [P]arties negotiate a settlement before a class has been certified, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Volkswagen*, 2016 WL

11

4010049, at *13.  To obtain class certification, a plaintiff must establish the requirements of Rule 23(a) and one of the three subsections of Rule 23(b).  *See Zynga*, 2015 WL 6471171, at *6.  "As in almost all lawsuits by shareholders of public companies, the investors in this case easily satisfy the requirements of Rule 23."  *In re Magma Design Automation, Inc. Sec. Litig.*, 2007 WL 2344992, at *1 (N.D. Cal. Aug. 16, 2007).

### A.    The Proposed Settlement Class Meets The Requirements Of Rule 23(a)

Rule 23(a) empowers a court to certify a class when: (1) the class is so numerous that joinder of all members impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

### 1.    The Settlement Class Is Sufficiently Numerous

Under Rule 23(a), a class may be certified if it is "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1).  "In cases involving securities traded on national stock exchanges, numerosity is practically a given."  *In re Verisign, Inc. Sec. Litig.*, 2005 WL 7877645, at *4 (N.D. Cal. Jan. 13, 2005)

During the Class Period, GoPro stock was traded on the NASDAQ.  *See* SAC ¶28.  Additionally, the average weekly trading volume for GoPro common stock during the Class Period was more than 48 million shares.  *See* ECF No. 108 at ¶ 24.  "Given this trading volume, common sense dictates that the proposed class is surely sufficiently large to make joinder impracticable."  *See In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018) (finding numerosity satisfied where the average weekly trading volume was about 5 million shares) (quoting *Maiman v. Talbott*, 2011 WL 13065750, at *3 (C.D. Cal. Aug. 29, 2011) (finding an average of 1.32 million shares traded per week sufficient for numerosity)).

### 2.    There Are Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class[.]"  Fed. R. Civ. P. 23(a)(2).  "Courts regularly hold that commonality is plainly satisfied in a securities case where the alleged misrepresentations obviously present important common issues."  *Booth v. Strategic Realty Trust, Inc.*, 2015 WL 3957746, at *3 (N.D. Cal. June 28, 2015).

12

In this case, the overarching issue shared by all members of the proposed settlement Class is whether Defendants violated the Exchange Act and the rules promulgated thereunder in connection with Lead Plaintiffs' factual allegations discussed above.  *See* SAC ¶155.  This issue involves common questions because each Class Member has to prove the same elements to establish Defendants' liability and thus the low hurdle of Rule 23(a)(2) is satisfied.  *See Zynga*, 2015 WL 6471171, at *6.

### 3.    The Proposed Class Representative's Claims Are Typical

A class may be certified if the claims of the representative parties are typical of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998).

Lead Plaintiff's claims arise from the same events and alleged misconduct and are based on the same legal theories as those of the proposed settlement Class.  Specifically, Lead Plaintiff claims that (a) Defendants violated §§10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 by issuing false and/or misleading statements; (b) Lead Plaintiff and other settlement Class Members purchased GoPro common stock at artificially inflated prices based on those false and/or misleading statements and were damaged thereby; and (c) by proving Lead Plaintiff's own claims, Lead Plaintiff would prove the claims of the settlement Class Members.  Thus, there is a sufficient nexus between Lead Plaintiff's claims and the Class's claims to satisfy Rule 23(a)(3).

### 4.    The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

Lead Plaintiff's interests in this case are directly aligned with those of the other members of the proposed settlement Class.  Lead Plaintiff claims that he suffered damages from the same alleged conduct as the other members of the Class, and through those claims seeks the same recovery from

13

Defendants.  Furthermore, Lead Plaintiff has demonstrated his ability and willingness to pursue the Action on the Class's behalf through his active involvement in the litigation and in approving the settlement.

Additionally, Lead Plaintiff's counsel is qualified, experienced, and able to conduct this litigation.  Indeed, Lead Counsel, a national law firm, has successfully litigated numerous securities fraud and complex class action cases.  *See* Ex. 2, Faruqi Firm resume.  Lead Counsel has devoted significant efforts to identifying and investigating the potential claims in this Action and fought vigorously to preserve those claims.  Based on the foregoing, Lead Plaintiff is an adequate representative for the settlement Class.

### B.      The Proposed Settlement Class Satisfies Rule 23(b)(3)

A class may be certified under Rule 23(b)(3) if the Court finds that: (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

### 1.      Common Questions of Law and Fact Predominate Over Questions Affecting Only Individual Members of the Class

"[T]he predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Zynga*, 2015 WL 6471171, at *7.  Rule 23(b)(3) does not require plaintiffs "to prove that each element of their claim is susceptible to class-wide proof."  *Chao v. Aurora Loan Servs., LLC*, 2014 WL 4421308, at *5 (N.D. Cal. Sept. 5, 2014).

Here, the common questions of law and fact described above predominate over any individual questions.  The same set of operative facts applies to each Class Member (*i.e.*, each Class Member purchased GoPro common stock during the settlement Class Period at prices alleged to be artificially inflated as a result of Defendants' false and misleading statements and/or omissions and each Class Member was allegedly harmed when the undisclosed facts came to light).  *See Zynga*, 2015 WL 6471171, at *7 (finding predominance satisfied when each class member purchased stock and suffered damages as a result).  As is the case in most securities fraud class actions, the answer to each of these common questions will be subject to common evidence because the misconduct alleged affected all

Class Members in the same way (*i.e.*, false and/or misleading statements and omissions caused the price of GoPro common stock to be artificially inflated during the Class Period).  *See In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *6 (S.D. Cal. Jan. 15, 2015) ("In the typical securities-fraud case, as in this case, the factual and legal issues related to most of these elements are common to the class, so the requirements for class certification are usually readily met.").

### 2.  A Class Action Is Superior to Other Methods of Adjudication

With respect to the superiority prong of Rule 23(b)(3), four factors should be considered: (i) class members' interest in individually prosecuting separate actions; (ii) the extent of any litigation already commenced by class members; (iii) the desirability of concentrating the litigation in the particular forum; and (iv) the difficulties in management of a class action.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 616 (1997).  Courts have recognized that "[c]lass actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants."  *VeriSign*, 2005 WL 7877645, at *9.

All four factors are satisfied in this case.  First, prosecution of this lawsuit on a class action basis will be more efficient than adjudication of the numerous individual shareholder claims because the shareholders are geographically dispersed and have relatively small claims.  *See id.* (finding class action superior where "[m]illions of VeriSign shares were traded daily during the Class Period, and over a billion shares were traded during the Class Period.").

Second, Lead Plaintiff and Lead Counsel have already invested significant resources thus far in preserving and prosecuting the claims asserted in the SAC.  Any additional individual litigation would simply be duplicative of Lead Plaintiff's efforts.  As well, certification is the superior method to facilitate the resolution of the Class's claims against Defendants because, absent certification, Defendants would not be able to obtain a Class-wide release and thus would have little incentive to enter into a settlement.  Thus, Lead Plaintiff has satisfied the superiority requirement of Rule 23(b)(3) and this Court should certify the proposed settlement Class.

### C.  The Faruqi Firm Should Be Appointed Class Counsel

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g).  Lead

1    Plaintiff respectfully requests that the Court appoint the Faruqi Firm as Class Counsel for the

2    settlement Class.  As discussed above, the Faruqi Firm has and will continue to fairly and adequately

3    represent the Class.  *See* §II.A.4, *supra*.  The firm is knowledgeable about the applicable law,

4    experienced in handling class actions, has performed substantial work in pursuing the claims and in

5    reaching a settlement, and has committed the necessary resources to representing the settlement Class.

6    *See* Fed. R. Civ. P. 23(g)(1).   Accordingly, the Faruqi Firm fulfills Rule 23(g)'s requirements and

7    should be appointed Class Counsel.

8    **III.     THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED**

9           Due process for class action plaintiffs requires that counsel provide "notice plus an opportunity

10   to be heard and participate in the litigation[.]"  *Epstein v. MCA, Inc.*, 179 F.3d 641, 649 (9th Cir.

11   1999).  The Supreme Court has held that due process is satisfied "where a fully descriptive notice is

12   sent first-class mail to each class member, with an explanation of the right to opt out[.]"  *Phillips*

13   *Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

14          As well, "[f]or any class certified under Rule 23(b)(3), class members must be afforded the best

15   notice practicable under the circumstances, which includes individual notice to all members who can

16   be identified through reasonable effort."  *Zynga*, 2015 WL 6471171, at *13.  Under this standard, the

17   notice must state the following in plain language: (i) the nature of the action; (ii) the class definition;

18   (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an

19   attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi) the

20   time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members.

21   *Id.*  Rule 23(e) requires notice that describes "the terms of the settlement in sufficient detail to alert

22   those with adverse viewpoints to investigate and to come forward and be heard."  *In re Online DVD-*

23   *Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015).  Furthermore, the PSLRA requires that the

24   notice contain: (i) a statement of the recovery; (ii) a statement of the potential outcome of the case; (iii)

25   a statement of attorneys' fees and costs; (iv) identification of the lawyers' representatives; (v) reasons

26   for settlement; (vi) other information the court requires; and (vii) a cover page summarizing that

27   information.  *See* 15 U.S.C. §78u-4(a)(7).

28          Here, the Notice and Summary Notice (collectively, the "Notices"), which along with the Proof

of Claim and Release form, will be sent by U.S. mail to Class Members and will be available on the
website www.GoProSecuritiesLitigation.com, and the Summary Notice will be published in *Investor's
Business Daily* and on *Globe Newswire*, have been carefully drafted to notify the Class of the
settlement's terms, the Class Members' rights in connection with the settlement, and the date of the
Settlement Hearing in compliance with Rules 23(c)(2) and 23(e), the PSLRA, and due process.
Indeed, the Notice includes: (i) the case caption; (ii) a description of the Action's claims; (iii) a
description of the settlement Class; (iv) the names of counsel for the settlement Class; (v) the
maximum amount of attorneys' fees, expense reimbursement, and the compensatory award for Lead
Plaintiff that will be sought; (vi) the Settlement Hearing date; (vii) a description of the settlement Class
Members' opportunity to appear at the hearing; (viii) a statement of the deadline for filing objections to
and exclusions from the settlement; (ix) the consequences of exclusion; (x) the consequences of
remaining in the settlement Class; and (xi) the manner in which to obtain more information.

The parties have agreed to use the traditional methods for notifying the Class Members:
notification by mail and by publication by wire service, in a national newspaper focusing on investors,
and on a designated website.  This manner of providing notice represents the best notice practicable
under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process.  *See,
e.g.*, *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007)
(approving notice by mail and publication to all reasonably identifiable class members as best
practicable).  Furthermore, the proposed settlement administrator, Epiq Class Action & Claims
Solutions, Inc. ("Epiq"), was chosen after Lead Counsel solicited estimates from Epiq and two other
well-respected claims administrators.  All three potential claims administrators proposed methods of
notice that are similar to those set forth above.  Lead Counsel chose Epiq, which submitted the second
lowest overall claims administration estimate, after determining that its overall estimate was more
realistic and amounted to a lower price per claim submitted than the lowest overall estimate.  Epiq has
served as a claims administrator in the last two years in the following cases in which the Faruqi Firm
served as lead or co-lead counsel:  *In re Comverge, Inc. S'holders Litig.*, C.A. No. 7368-VCMR (Del.
Ch.) (appointed as claims administrator by the court on June 16, 2017) and *In re Geron Corp. Sec.
Litig.*, No. 3:14-cv-01224 (CRB) (N.D. Cal.) (appointed as claims administrator by the court on April

10, 2017).

Epiq's estimated administration expenses are $174,285.35. These administration expenses will amount to only $0.004—*less than one cent*—per share of common stock, which is a very reasonable amount given the high quality of Epiq's services. Accordingly, Lead Plaintiff respectfully requests that the Court approve the Notices and the procedures for their dissemination.

Based on Epiq's and Lead Counsel's experience in the settlement of similar cases, it is estimated that approximately 20% of potential class members to whom notice can be provided will submit a claim form. Epiq based its estimate of a 20% response rate upon its experience with past securities fraud class action settlements, including *Hatamian, et al. v. Advanced Micro Devices, Inc., et al.*, No. 14-cv-00226-YGR (JSC) (N.D. Cal.), a recent securities fraud class action settlement from this District brought on behalf of a class of investors under Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5. *See Hatamian* docket, ECF No. 332 (preliminary approval motion) at 2-3. That case used methods of notice similar to those proposed in this Action, and had a response rate of approximately 19%. *See Hatamian* docket, ECF No. 227 (Order Approving Class Notice and Proposal for Dissemination) at 1-3 (explaining notice procedures); *Hatamian* docket, ECF No. 372 (distribution motion) at 3-4 (stating that 42,676 claims were submitted out of the 224,669 notices that were mailed).

Lead Counsel cross-checked the reasonableness of the estimated 20% response rate by comparing it to the approximate response rates in two recent cases from this Circuit in which it served as Lead Counsel, *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-cv-02796-CRB (N.D. Cal.), which had a 19% response rate, and *Rihn v. Acadia Pharms. Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal.), which had a 22% response rate.[8] These examples were selected because, like *Hatamian*, they are both securities fraud class action settlements from this Circuit that received final approval in the last two years, were brought on behalf of classes of investors under, *inter alia*, Sections 10(b) and 20(a) of the

---

[8] The 19% response rate in *Dynavax* was determined by dividing the 6,434 claims submitted to the claims administrator by the total number of notices sent, 33,117. *See Dynavax* docket, ECF No. 157-1 (a declaration from the claims administrator in support of the distribution motion) at ¶¶3, 10. The 22% response rate in *Acadia* was determined by dividing the 6,213 claims submitted to the claims administrator by the total number of notices sent, 27,841. *See Acadia* docket, ECF No. 81 at ¶2 (a declaration from the claims administrator regarding, *inter alia*, mailing and claims received); ECF No. 94-2 (a declaration from the claims administrator in support of the distribution motion) at ¶9.

1  Exchange Act, and SEC Rule 10b-5, and used methods of notice similar to those proposed in this

2  Action.[9]  *See Dynavax* docket, ECF No. 141 (preliminary approval motion) at 1-3, 10; *Dynavax*

3  docket, ECF No. 144 (preliminary approval order); *Acadia* docket, ECF No. 69-1 (brief in support of

4  preliminary approval motion) at 2-3; *Acadia* docket, ECF No. 71 (preliminary approval order).

5  **IV.   THE PROPOSED SCHEDULE OF EVENTS**

6        No later than seven calendar days after entry of the Preliminary Approval Order, GoPro will

7  cause a list of record owners to be provided to the Claims Administrator.  *See* Stipulation, Ex. A,

8  Proposed Preliminary Approval Order, at ¶10.  Within ten business days after receipt of the record

9  owners list, the Claims Administrator will mail a copy of the Notices and Proof of Claim and Release

10  form, substantially similar to the form attached as Exhibits A-1 and A-2 to the Stipulation, to the

11  record owners on the list and will post a copy of the Notices and Proof of Claim and Release form on

12  the website established for the Action ("Notice Date").  *Id.* at ¶11.  Within ten calendar days after

13  receipt of the Notice and Proof of Claim and Release form, nominees or custodians are to either: (a)

14  request additional copies of those documents in quantities sufficient to send to the beneficial owners

15  and then send them to such beneficial owners within ten calendar days after receipt of the additional

16  copies; or (b) provide the Claims Administrator with the beneficial owners' information, so that the

17  Claims Administrator may send those documents to the beneficial owners as soon as practicable

18  thereafter.  *Id.* at ¶13.  Not later than 14 calendar days after the Notice Date, the Summary Notice shall

19  be published once in a national edition of *Investor's Business Daily* and on *Globe Newswire*.  *Id.* at

20  ¶12.  In connection with preliminary approval of the Settlement, the Court must set notice and

21  objection deadlines.  The Settling Parties respectfully proposed the following schedule:

| Event | Time for Compliance |
|---|---|
| Deadline for GoPro to cause the Claims Administrator to be provided with a list of record holders (Ex. A at ¶10) | 7 calendar days after entry of the Preliminary Approval Order |

---

[9]     *Dynavax* also included a claim under Section 20A of the Exchange Act.  *See Dynavax* docket, ECF No. 141 (preliminary approval motion) at 10.

19

| Event | Time for Compliance |
|---|---|
| Deadline for Claims Administrator to mail the Notice and Proof of Claim and Release to the list of record holders and to post to the settlement website the Stipulation and its exhibits, the preliminary approval motion, the Preliminary Approval Order, and a copy of the Notice and Proof of Claim and Release (Ex. A at ¶11) | 10 business days after receipt of the record owners list ("Notice Date") |
| Deadline for publishing the Summary Notice (Ex. A at ¶12) | 14 calendar days after the Notice Date |
| Deadline for nominees or custodians to either: (i) request additional copies of the Notice and Proof of Claim and Release sufficient to send them to all beneficial owners for whom they are nominee or custodian; or (ii) provide the Claims Administrator with such beneficial owners' information (Ex. A at ¶13) | 10 calendar days of the nominees' or custodians' receipt of the Notice and Proof of Claim |
| Deadline for nominees or custodians who choose to send out Notice and Proof of Claim Forms to beneficial owners to do so (Ex. A at ¶13) | 10 calendar days after receipt of the additional copies requested |
| Deadline for Claims Administrator to mail the Notice and Proof of Claim and Release to all settlement Class Members whom the Claims Administrator identifies by reasonable efforts (Ex. A at ¶14) | As soon as practicable after the Claims Administrator receives lists of beneficial owners from nominees and custodians |
| Deadline for Claims Administrator to mail the Notice and Proof of Claim to such beneficial owners who request it, or otherwise instruct Class Members as to how to receive the Notice electronically and how to submit a Proof of Claim and Release form (Ex. A at ¶15) | Promptly upon receiving requests from Class Members |
| Deadline for Lead Counsel to serve on Defendants' counsel and file with the Court proof, by affidavit or declaration, of such mailing and publishing (Ex. A at ¶16) | 7 calendar days prior to the Settlement Hearing |
| Deadline for objecting or requesting exclusion (Ex. A at ¶¶18, 20) | 21 calendar days prior to the Settlement Hearing |

PLAINTIFF'S PRELIMINARY APPROVAL MOTION No. 4:16-CV-06654-CW

| Event | Time for Compliance |
|---|---|
| Deadline for filing briefs in support of final approval of the settlement, the Plan of Allocation, attorneys' fees and expenses, and for Lead Plaintiff's expenses (Ex. A at ¶22) | 56 calendar days prior to the Settlement Hearing |
| Deadline for filing replies to any objections (Ex. A at ¶22) | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing (Ex. A at ¶5) | At least 100 calendar days from the date of the Preliminary Approval Order |
| Deadline for submitting Proofs of Claim and Release (Ex. A at ¶17) | 90 calendar days from the Notice Date |

**CONCLUSION**

Lead Plaintiff respectfully requests that this Court: (a) preliminarily approve the proposed Settlement and schedule a Settlement Hearing; (b) preliminarily certify the proposed settlement Class, appoint Lead Plaintiff as settlement Class Representative and the Faruqi Firm as settlement Class Counsel; and (c) approve the proposed forms of notice and the proposed notice plan.

Dated: February 14, 2019

Respectfully submitted,

By: /s/ *Richard W. Gonnello*
Richard W. Gonnello

Richard W. Gonnello (*pro hac vice*)
Katherine M. Lenahan (*pro hac vice*)
Sherief Morsy (*pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
klenahan@faruqilaw.com
smorsy@faruqilaw.com

Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email: bheikali@faruqilaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Lead Plaintiff Troy Larkin*

PLAINTIFF'S PRELIMINARY APPROVAL MOTION No. 4:16-CV-06654-CW