Benjamin Heikali SBN 307466
Email: bheikali@faruqilaw.com
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885

Richard W. Gonnello (*pro hac vice*)
Katherine M. Lenahan (*pro hac vice*)
Sherief Morsy (*pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
        klenahan@faruqilaw.com
        smorsy@faruqilaw.com

*Attorneys for Lead Plaintiff Troy Larkin*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY LARKIN, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>  vs.<br><br>GOPRO, INC., NICHOLAS D. WOODMAN, BRIAN MCGEE and ANTHONY BATES,<br><br>                                    Defendants | Case No. 4:16-CV-06654-CW<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**CLASS ACTION**<br><br>Date:        September 10, 2019<br>Time:       2:30 p.m.<br>Judge:      The Hon. Claudia Wilken<br><br>Date Action Filed:  November 16, 2016 |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION AND STATEMENT OF COURT ACTION SOUGHT.........1

STATEMENT OF ISSUES TO BE DECIDED .................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................2

INTRODUCTION .........................................................................................................2

FACTUAL AND PROCEDURAL BACKGROUND....................................................3

ARGUMENT .................................................................................................................5

I.      THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ...........................5

        A.      The Proposed Settlement Is Not The Result Of Collusion ........................5

        B.      The Proposed Settlement Is Fair, Adequate, And Reasonable Under the Ninth Circuit's Factors.......................................................................................7

                1.      The Strengths and Risks of the Case Support Final Approval............................7

                2.      The Risks Facing Class Certification Support Final Approval...........................9

                3.      The Amount of the Settlement Supports Final Approval ....................................9

                4.      The Stage of the Proceedings Supports Final Approval ...................................11

                5.      The Experience of Counsel Supports Final Approval .......................................12

                6.      The Reaction of the Class Supports Final Approval..........................................12

        C.      The Proposed Settlement Is Fair, Adequate, and Reasonable Under The Recent Amendments to Rule 23(e)(2) ..................................................................13

                1.      Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class.......................................................................................14

                2.      The Settlement Was Negotiated at Arm's Length .............................................14

                3.      The Relief Provided for the Class Is Adequate.................................................15

                4.      The Settlement Treats Class Members Equitably Relative to Each Other .........16

II.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE...................16

III.    THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS ......18

IV.     THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES .........................19

i

1

CONCLUSION..................................................................................................................19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEAD PLAINTIFF'S FINAL APPROVAL MOTION No. 4:16-CV-06654-CW

1

2

**TABLE OF AUTHORITIES**

3

**Cases**                                                                                                               **Page(s)**

4  *In re Am. Apparel, Inc. Shareholder Litig.*,
       2014 WL 10212865 (C.D. Cal. July 28, 2014) .................................................... 16, 17

5  *In re Bear Stearns Cos.*,
6      909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................... 19

7  *Becker v. Bank of New York Mellon Trust Co., N.A.*,
       2018 WL 6727820 (E.D. Pa. Dec. 21, 2018) .................................................... 15, 16

8  *In re Bluetooth Headset Prods. Liab. Litig.*,
9      654 F.3d 935 (9th Cir. 2011) ............................................................................ 5, 6

10 *In re Celera Corp. Sec. Litig.*,
11     2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ........................................... 8, 13, 19

12 *In re Cendant Corp. Litig.*,
       264 F.3d 201 (3d Cir. 2001) ................................................................................ 10

13 *Chun-Hoon v. McKee Foods Corp.*,
14     716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................. 13

15 *Churchill Village, L.L.C. v. General Electric*,
       361 F.3d 566 (9th Cir. 2004) ................................................................................. 7

16 *In re Citigroup, Inc. Sec. Litig.*,
17     2014 WL 2112136 (S.D.N.Y. May 20, 2014) ..................................................... 10

18 *In re Cylink Sec. Litig.*,
19     274 F. Supp. 2d 1109 (N.D. Cal. 2003) ................................................................. 9

20 *Destefano v. Zynga, Inc.*,
       2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................ 5, 6, 7, 11
21
   *Hayes v. MagnaChip Semiconductor Corp.*,
22     2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ....................................................... 5

23 *Hefler v. Wells Fargo & Co.*,
24     2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ......................................... 14, 15, 16

25 *Hendricks v. StarKist Co.*,
       2015 WL 4498083 (N.D. Cal. July 23, 2015) ...................................................... 16
26
   *In re Heritage Bond Litig.*,
27     2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................. 5, 17

28

*In re High-Tech Employee Antitrust Litig.,*
  2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ................................................. 17

*In re Immune Response Sec. Litig.,*
  497 F. Supp. 2d 1166 (S.D. Cal. May 31, 2007) .......................................... 9, 12

*Int'l Brotherhood of Electrical Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.,*
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ................................................... 10

*Johansson-Dohrmann v. Cbr Sys., Inc.,*
  2013 WL 3864341 (S.D. Cal. July 24, 2013) ................................................... 7

*Klee v. Nissan N. Am., Inc.,*
  2015 WL 4538426 (C.D. Cal. July 7, 2015) ..................................................... 7

*Linney v. Cellular Alaska P'ship,*
  151 F.3d 1234 (9th Cir. 1998) ........................................................................ 10

*In re Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000) .......................................................................... 14

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................................... 12

*Nobles v. MBNA Corp.,*
  2009 WL 1854965 (N.D. Cal. June 29, 2009) ............................................... 5, 8

*Officers for Justice v. Civil Service Comm.,*
  688 F.2d 615 (9th Cir. 1982) ....................................................................... 9, 10

*In re Omnivision Techs,. Inc.,*
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................. 9, 12, 13

*Patel v. Axesstel, Inc.,*
  2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) ........................................... 8, 9, 17

*Ramirez v. Ghilotti Bros. Inc.,*
  2014 WL 1607448 (N.D. Cal. Apr. 21, 2014) ................................................. 12

*Rieckborn v. Velti PLC,*
  2015 WL 468329 (N.D. Cal. Feb. 3, 2015) .......................................... 6, 11, 12

*Roberti v. OSI Sys., Inc.,*
  2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) .................................................... 7

*Rubio-Delgado v. Aerotek, Inc.,*
  2015 WL 3623627 (N.D. Cal. June 10, 2015) ........................................... 10, 11

*Ruch v. AM Retail Grp., Inc.,*
  2016 WL 5462451 (N.D. Cal. Sept. 28, 2016) .................................................. 6

iv

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*,
    2017 WL 2212783 (N.D. Cal. May 17, 2017) ...................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................................... 5, 13, 16, 18

Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2017 Full-Year Review* (NERA 2018) ........................................................... 10

**NOTICE OF MOTION AND MOTION AND STATEMENT OF COURT ACTION SOUGHT**

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on September 10, 2019 at 2:30 p.m., before the Honorable Claudia Wilken, Lead Plaintiff Troy Larkin ("Lead Plaintiff") will move this Court for an order granting: (i) final approval of the proposed Settlement of this Action; (ii) final certification of the proposed class for purposes of Settlement; and (iii) final approval of the proposed Plan of Allocation.[1] The grounds for this motion are that the terms of the proposed Settlement and the Plan of Allocation are fair, reasonable, and adequate and have received a positive reaction from the Class.

This motion is based upon the Memorandum of Points and Authorities set forth below; the Faruqi Declaration, with attached exhibits, filed herewith; the Epiq Declaration, with attached exhibits, filed herewith; and the pleadings and records on file in this action, and other such matters and argument as the Court may consider at the hearing of this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should approve the proposed Settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure ("Rule") 23(e), the PSLRA, and due process.

2.      Whether the Court should approve the Plan of Allocation as fair, reasonable, and adequate.

3.      Whether the Court should grant final certification of the Action as a class action pursuant to Rules 23(a) and (b)(3) for settlement purposes and appoint Lead Plaintiff as Class Representative and Faruqi & Faruqi, LLP (the "Faruqi Firm") as Class Counsel.

---

[1]      Unless otherwise noted, the following conventions are employed herein: (1) all internal citations and quotations are omitted; (2) all emphases are added; (3) all capitalized terms that are not otherwise defined herein shall have the same meaning as those provided in the Stipulation of Settlement dated as of February 14, 2019 (the "Stipulation") (ECF No. 115); (4) all references to the "Settlement" are to the settlement described in the Stipulation; (5) all references to the "Faruqi Declaration" or "Faruqi Decl." are to the Declaration of Nadeem Faruqi in Support of Lead Plaintiff's Motion for Final Approval of the Class Action Settlement and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award for Lead Plaintiff, filed herewith; (6) all references to the "Epiq Declaration" or "Epiq Decl." are to the Declaration of Jaime Firenze Regarding: (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date, filed herewith; and (7) all ECF pin cites are to the document's native pagination unless otherwise noted.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff, on behalf of himself and the putative Class, respectfully submits this memorandum in support of his motion for final approval of the Settlement and requests that the Court enter the proposed Final Judgment filed herewith which will, among other things: (1) approve the Settlement on the terms set forth in the Stipulation; (2) certify the Class for settlement purposes; and (3) approve the Plan of Allocation.

## INTRODUCTION

Lead Plaintiff, on behalf of himself and the putative Class, and defendants GoPro, Inc. ("GoPro"), Nicholas Woodman ("Woodman"), Brian McGee ("McGee"), and Anthony Bates ("Bates") (collectively "Defendants") have reached a proposed settlement of all claims asserted in the above-captioned action (the "Action") in exchange for $6,750,000 in cash.  In light of the significant risk that a smaller recovery—or no recovery at all—might be achieved if the Action were to proceed to trial, and the likely appeals that would follow, the Settlement represents an excellent result for the Class.

As discussed below and in the Faruqi Declaration, the Settlement resulted from arm's-length negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.  Prior to reaching the Settlement, Lead Counsel thoroughly investigated and vigorously prosecuted the Action by, *inter alia*¸ drafting a detailed amended complaint; successfully opposing Defendants' motion to dismiss; exchanging discovery requests with Defendants; reviewing thousands of pages of discovery documents from Defendants; filing a motion for class certification; defending Lead Plaintiff's deposition; and conferring with investigators and consulting experts regarding various aspects of the claims.  *See* Faruqi Decl. ¶¶28, 69.

The Class's reaction to the Settlement and Plan of Allocation to date has been positive. Pursuant to the Order Preliminarily Approval Settlement and Providing for Notice ("Preliminary Approval Order") (ECF No. 124), the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), has, *inter alia*, mailed over 53,950 copies of the Notice and Proof of Claim and Release form to potential Class Members and nominees, posted the requisite documents to the Action's settlement website, and caused the Summary Notice to be published in *Investor's*

*Business Daily* and posted to *Globe Newswire*.  Epiq Decl. at ¶¶2-9, 14; Faruqi Decl. ¶¶49-51.  While the August 20, 2019 deadline for Class Members to object to the Settlement or request exclusion from the Class has not yet passed, as of July 12, 2019, only two requests for exclusion have been received. Epiq Decl. at ¶15; Faruqi Decl. ¶¶53-54.

In light of the considerations discussed herein, Lead Plaintiff and Lead Counsel submit that the Settlement is fair, reasonable, and adequate; satisfies the standards of Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, and due process; and provides a significant recovery for the Settlement Class.  Lead Plaintiff accordingly requests that the Court: (i) grant final approval of the Settlement; (ii) deem the Plan of Allocation to be a fair, reasonable, and adequate method for distributing the Net Settlement Fund to Authorized Claimants; and (iii) grant final certification of the proposed Class for settlement purposes and appoint Lead Plaintiff as Class Representative and Faruqi & Faruqi, LLP as Class Counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 2016, plaintiff Anton Bielousov filed the initial class action complaint in the United States District Court for the Northern District of California naming GoPro and Woodman as defendants and alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b), 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder.  *See* ECF No. 1.  On February 6, 2017, the Court appointed Troy Larkin as Lead Plaintiff and approved his selection of Faruqi & Faruqi, LLP as Lead Counsel.  ECF No. 47.  Mr. Larkin filed the amended complaint ("AC") (ECF No. 51) on March 14, 2017, adding McGee and Bates as defendants.

The AC alleges that, during the Class Period, Defendants made false and/or misleading statements and opinions about, *inter alia*, GoPro's revenue and profitability estimates, its Karma quadcopter drone, and its HERO5 camera.  *See* AC ¶¶96, 98, 100, 111, 114, 116, 118.  Meanwhile, the AC alleges Defendants failed to disclose, *inter alia*, that both the HERO5 and Karma product lines suffered from production issues and supply shortages that undermined GoPro's revenue and profitability estimates, AC ¶¶70-83, that the only retailer selling the Karma drone—if any retailer was selling it at all—was GoPro's lone U.S. third-party retailer BestBuy, AC ¶80, and that the Karma drone

3

1  suffered from dangerous design defects that resulted in its recall, AC ¶¶67-69, 88-89.  As alleged in the

2  AC, the true facts concealed by Defendants came out gradually over time in disclosures on October 23-

3  24, 2016, November 3, 2016, November 8, 2016, and February 2, 2017, each of which led to a decline

4  in the price of GoPro common stock.  *See, e.g.*, AC ¶¶158-66.

5  On April 13, 2017, Defendants filed a motion to dismiss the AC (ECF No. 57), which the Court

6  denied in an order filed on July 26, 2017 ("MTD Order") (ECF No. 74).  Pursuant to the MTD Order,

7  Lead Plaintiff filed the Second Amended Complaint ("SAC")—the operative complaint in this

8  Action—on August 4, 2017, revising the caption to reflect the newly added defendants.  ECF No. 79.

9  On September 8, 2017, Defendants filed their Answer to the SAC.  *See* ECF No. 82.

10  Shortly thereafter, the Court entered an order setting forth the schedule for the action that

11  reflected the parties' agreement to divide discovery into two phases, "Phase I" and "Phase II."  ECF

12  No. 90 at 1.  Phase I was scheduled to end and Phase II was scheduled to begin on May 10, 2018.  *Id.*

13  After agreeing on the categories of information sought during Phase I, the parties proceeded to

14  exchange discovery within those categories.  Faruqi Decl. ¶23.  During Phase II of discovery, Lead

15  Plaintiff served formal discovery on Defendants and filed a class certification motion.  ECF No. 105.

16  The parties agreed to mediate and filed a stipulation seeking to temporarily stay the proceedings, with

17  the exception of Lead Plaintiff's deposition and Defendants' class certification opposition.  ECF No.

18  109.  The Court approved the stay on July 12, 2018 (ECF No. 110) and thereafter terminated the class

19  certification motion (ECF No. 111).

20  On September 11, 2018, the parties engaged in an in-person mediation before Robert Meyer,

21  Esq., a highly experienced securities litigation mediator.  *See* ECF No. 112.  In the weeks following the

22  session, the parties continued to negotiate with Mr. Meyer's assistance and reached an agreement in

23  principle to settle the claims against Defendants.  *See id.*  The parties then worked over the course of

24  several months to finalize the terms of the Stipulation.   Faruqi Decl. ¶31.

25  Lead Plaintiff filed a Motion for Preliminary Approval of the Class Action Settlement on

26  February 14, 2019 ("Preliminary Approval Motion") (ECF No. 116).  On April 9, 2019, the Court held

27  a hearing on the Preliminary Approval Motion and ordered that revisions be made to certain of the

28  notice documents.  *See* ECF No. 122.  Lead Plaintiff thereafter filed a "Notice of Filing of Revised

1   Exhibits A, A-1, and A-2 to the Stipulation" that submitted the revised documents listed in the title and

2   answered questions that the Court had during the hearing.  ECF No. 123.  The Court then issued the

3   Preliminary Approval Order on April 26, 2019, appointing Epiq as the Claims Administrator for the

4   Settlement, approving the form of the Notice and Summary Notice (collectively, "Notices"), and the

5   manner of providing notice of the Settlement to the Class, and preliminarily certifying the Class for

6   settlement purposes.  The details of the notice program's progress to date are explained in further detail

7   in Section III, *infra*.

**ARGUMENT**

**I.   THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL**

10        Fed. R. Civ. P. 23(e) provides that a class action settlement must receive court approval.  A

11   court should approve a class action settlement if it determines that the settlement is "fair, reasonable,

12   and adequate[.]"  Fed. R. Civ. P. 23(e)(2).  While the authority to grant such approval lies within the

13   court's discretion, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly

14   where complex class action litigation is concerned."  *In re Heritage Bond Litig.*, 2005 WL 1594403, at

15   *2 (C.D. Cal. June 10, 2005).  Indeed, as one court has explained, "intrusion upon what is otherwise a

16   private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

17   necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

18   by, or collusion between, the negotiating parties."  *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *1

19   (N.D. Cal. June 29, 2009).  Thus, when deciding whether to approve a settlement, the court must

20   ensure that: (1) "the settlement is not the product of collusion among the negotiating parties" and (2)

21   that the "settlement is fundamentally fair, adequate, and reasonable."  *Hayes v. MagnaChip*

22   *Semiconductor Corp.*, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016).

23        **A.   The Proposed Settlement Is Not The Result Of Collusion**

24        As the Ninth Circuit explained in *In re Bluetooth Headset Prods. Liab. Litig.*, "when a

25   settlement agreement is negotiated *prior* to formal class certification," the court must also analyze

26   whether the settlement was reached as a result of collusion between the parties.  *Destefano v. Zynga,*

27   *Inc.*, 2016 WL 537946, at *8 (N.D. Cal. Feb. 11, 2016) (citing *Bluetooth*, 654 F.3d 935, 946 (9th Cir.

28   2011)).  In addition to obvious signs of collusion, *Bluetooth* identified three subtle signs of collusion:

5

1   (1) when class counsel receives a disproportionate percentage of the settlement; (2) when the parties

2   negotiate a "clear sailing" agreement separate from the settlement fund; and (3) when the parties

3   arrange for fees not paid to revert to defendants.  *See id.* at \*9.

4        There was no collusion here.  After contentiously litigating this Action for nearly two years and

5   analyzing the risks and costs of moving forward with the Action, the parties engaged Robert Meyer,

6   Esq. of JAMS, a well-respected and experienced mediator, to assist them in exploring a potential

7   resolution of the Action.  *See* Faruqi Decl. ¶¶28-30.  On September 11, 2018, the parties met with Mr.

8   Meyer for an arm's-length mediation session.  *See id.* at ¶30.  During the session, the parties

9   extensively debated the strengths and weaknesses of Lead Plaintiff's claims and the defenses available

10  to Defendants.  *See id.*  Over the next few weeks, the parties continued to negotiate with the help of

11  Mr. Meyer and were eventually able to reach a resolution.  *See id.* at ¶31.  The parties then worked

12  together over the course of the next several months to come to an agreement on the terms of the

13  Stipulation.  *See id.*  Thus, the parties obviously did not engage in collusion when entering into the

14  Settlement.  *See Ruch v. AM Retail Grp., Inc.*, 2016 WL 5462451, at \*8 (N.D. Cal. Sept. 28, 2016)

15  (finding no collusion when the parties "participated in a formal private mediation, then spent several

16  weeks negotiating the details of the Settlement Agreement and the class notice[]").

17       None of the subtle factors indicating collusion are present here either.  Lead Counsel has

18  requested an award of attorneys' fees equal to 25% of the Settlement Fund.  *See* Faruqi Decl. ¶10.

19  This percentage is based on the benchmark in this Circuit and often awarded in similar actions, thus

20  weighing against a finding of collusion.  *See Rieckborn v. Velti PLC*, 2015 WL 468329, at \*8 (N.D.

21  Cal. Feb. 3, 2015) (finding 25% fee and request for approximately $219,000 in litigation expenses

22  weighed against finding of collusion).  A "clear sailing" agreement exists "when the parties

23  negotiate . . . [an] arrangement providing for the payment of attorneys' fees separate and apart from

24  class funds[.]"  *Bluetooth*, 654 F.3d at 947.  Such an agreement could potentially "enabl[e] a defendant

25  to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement"

26  on the class's behalf.  *Id.*  There is no such arrangement here: the attorneys' fees are to be paid only out

27  of the Settlement Fund, and at a rate approved by the Court.  *See* Stipulation ¶¶6.1-6.2.  Indeed,

28  Defendants specifically stipulate that they are not responsible for paying any attorneys' fees.  *See id.* at

¶6.6.  Further, even if there were such an agreement, "the absence of a 'kicker provision' stating that all fees not awarded would revert to defendants, weighs against a finding of collusion."  *Klee v. Nissan N. Am., Inc.*, 2015 WL 4538426, at *10 (C.D. Cal. July 7, 2015).  In this case, any attorneys' fees requested but denied by the Court would remain in the Class's Settlement Fund.

Therefore, because the terms of the Settlement were negotiated at arm's-length with the help of an esteemed mediator, the Settlement is not the result of collusion between the parties.  *See Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) (full day mediation session and subsequent discussions with the help of an experienced mediator supported a finding that the settlement was not the result of collusion).

**B.    The Proposed Settlement Is Fair, Adequate, And Reasonable Under the Ninth Circuit's Factors**

When determining whether a settlement satisfies Rule 23(e), courts in this Circuit consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expenses, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant;[2] and (8) the reaction of the class members to the proposed settlement.  *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).  "The Court need not consider all of these factors, or may consider others."  *Zynga,* 2016 WL 537946, at *8.  As discussed below, the relevant factors support final approval.

**1.    The Strengths and Risks of the Case Support Final Approval**

Factors one and two support final approval.  When determining the reasonableness of the settlement, "the Court must balance against the continuing risks of litigation (including the strengths and weaknesses of the plaintiff's case), the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery."  *Johansson-Dohrmann v. Cbr Sys., Inc.*, 2013 WL 3864341, at *4 (S.D. Cal. July 24, 2013).  While "there is no particular formula by which the outcome

---

[2]    The seventh factor is not relevant in this Action because there was no government participant; thus Lead Plaintiff will not analyze that factor.

1    must be tested" when "assessing the strength of a plaintiff's case," "[t]he court may presume that

2    through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by

3    considering Plaintiff's likelihood of recovery." *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at

4    *5 (N.D. Cal. Nov. 20, 2015).

5        Lead Plaintiff has always believed that his claims have merit and would be proven true through

6    fact discovery.  Despite this confidence, Lead Plaintiff is aware of the substantial risks and expenses

7    that would be presented by further litigation based on his work to date.

8        It is well known that class action litigation is inherently complex, *see Nobles*, 2009 WL

9    1854965, at *2 (finding a proposed settlement to be proper "given the inherent difficulty of prevailing

10   in class action litigation[]"), and this case in particular involves complex securities fraud rules, statutes,

11   and factual circumstances.  In order to develop the claims in the SAC, the fact discovery process would

12   require, among other things, numerous document production subpoenas to third parties which are

13   notoriously difficult to enforce; engaging in discovery motion practice; producing and reviewing at

14   least hundreds of thousands of pages of documents; taking numerous depositions; and retaining supply

15   chain monitoring, manufacturing, and financial expert witnesses.  Over more than two years of

16   litigation, Defendants have vehemently denied any wrongdoing and would continue to aggressively

17   litigate this Action at each step.  Thus, even after the considerable time and expense of additional

18   discovery, which would span many more months, there is a chance Lead Plaintiff's claims could be

19   dismissed at summary judgment.  Even if the claims were to survive summary judgment, trial would be

20   very time consuming and expensive and would monopolize valuable court resources.  Indeed, the

21   damages issues present in this case would likely boil down to a "battle of the experts" at trial, creating

22   the risk that the jury may believe Defendants' expert over Lead Plaintiff's and find in Defendants'

23   favor.  Thus, after the expense and time devoted to taking this Action to trial, the Class could be left

24   with no recovery at all.  Even further, this Action would not necessarily end after a trial; the losing

25   party might appeal the decision, leading to additional years of protracted litigation.  *See Patel v.*

26   *Axesstel, Inc.*, 2015 WL 6458073, at *5 (S.D. Cal. Oct. 23, 2015) ("The settlement prevents these

27   expenses" of "discovery, motion practice, experts, trial, and appeals" "and the likely long duration of

28   the litigation from eroding or delaying the ultimate recovery, if any, of the class members.").

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* at *5; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. May 31, 2007) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). Here, this factor also weighs in support of final approval as the insurance policies used to pay the Settlement would have been significantly depleted through further litigation, leaving Lead Plaintiff with only the Company and individual Defendants as sources of recovery. *See In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1111 (N.D. Cal. 2003) (considering future depletion of insurance policies when granting final approval of settlement).

### 2. The Risks Facing Class Certification Support Final Approval

At the time the Settlement was reached, Lead Plaintiff had moved for class certification and had been deposed, but the Court terminated the class certification motion after approving the parties' agreement to stay the litigation pending mediation. *See* ECF Nos. 110-11. While Lead Plaintiff strongly believes that his arguments for certification would be meritorious, Defendants undoubtedly would have raised various challenges to class certification. As the court in *In re Omnivision Techs,. Inc.*, 559 F. Supp. 2d 1036, 1042-43 (N.D. Cal. 2007) explained, "[i]f the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely . . . As Defendants agree to the class certification for the purposes of settlement, there is much less risk of anyone who may have actually been injured going away empty-handed."

In any event, even if class certification were granted, there is always a risk that the class could be decertified at a later stage in the proceedings. *See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*, 2017 WL 2212783, at *14 (N.D. Cal. May 17, 2017) ("Although there does not appear to be any issue with maintaining class certification at this point, if the parties had not settled, . . . even if the Court certified the class, there is a risk that the Court could later de-certify it."). Thus, the risks and uncertainty surrounding Class certification also supports approval of the Settlement.

### 3. The Amount of the Settlement Supports Final Approval

As the Ninth Circuit has noted, "[t]he proposed settlement is not to be judged against a

hypothetical or speculative measure of what *might* have been achieved by the negotiators. . . ."; rather, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Service Comm.*, 688 F.2d 615, 625 (9th Cir. 1982).  Thus, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

The Settlement Amount of $6,750,000 provides an excellent recovery for the Class and constitutes a material percentage of the likely provable damages suffered by the Class.  It is currently estimated that if Class Members submit claims for 100% of the shares eligible for distribution, the average distribution per share of common stock will be approximately $0.14 before deduction of Court-approved fees and expenses.  *See* Faruqi Decl. ¶66.  If Lead Plaintiff were to prevail on each of the claims in the SAC at trial, the damages per share of common stock would be $2.77.  *See id.*  The Settlement Amount is approximately 5.23% of the maximum potential damages (assuming all claims and damages were proven) that Lead Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged fraudulent activity.  *See id.*  This is much higher than the median ratio of settlement amounts to investor losses for 2017, which NERA Economic Consulting determined was 2.6%.  *See id.*, Ex. B at 38, Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* (NERA 2018).  The percentage is also within the range of typical recoveries in complex securities litigation.  *See In re Cendant Corp. Litig.,* 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in complex securities class actions range from 1.6% to 14% of estimated damages); *see also Int'l Brotherhood of Electrical Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.,* 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (finding settlement that was 3.5% of maximum damages was "within the median recovery in securities class actions"); *In re Citigroup, Inc. Sec. Litig.*, 2014 WL 2112136, at *5 (S.D.N.Y. May 20, 2014) (determining settlement amount representing 2% of the class' out-of-pocket losses "falls squarely within this range of reasonableness").

As one court in this District noted, "[a]lthough the proposed settlement is only a small percentage of the total expected recovery at trial, there is no reason, at least in theory, why a

satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Rubio-Delgado v. Aerotek, Inc.*, 2015 WL 3623627, at *9 (N.D. Cal. June 10, 2015).

Furthermore, as discussed above, if the Action were to proceed, there is a possibility that recovery in an amount greater than the Settlement Amount would not be achieved because Defendants would continue to aggressively seek dismissal of the claims against them through summary judgment and trial. *See* Faruqi Decl. ¶¶32-40.

### 4.    The Stage of the Proceedings Supports Final Approval

When determining whether the stage of the proceedings and extent of discovery completed supports settlement, "the court focuses on whether the parties carefully investigated the claims before reaching a resolution." *Zynga*, 2016 WL 537946, at *12.

Here, the parties agreed to engage in a mediation session after, *inter alia*, (1) Lead Counsel, on behalf of Lead Plaintiff, conducted an extensive investigation into the facts alleged in the Action; (2) Lead Counsel drafted the AC; (3) the parties engaged in motion to dismiss briefing; (4) Lead Counsel filed the SAC and Defendants filed an answer to it; (5)  Defendants and Lead Plaintiff exchanged discovery requests; (6) Lead Counsel reviewed thousands of pages of documents from Defendants and worked with Lead Plaintiff to produce over a thousand pages of documents requested by Defendants; (7) Lead Plaintiff filed a motion for class certification; and (8) Defendants reviewed documents produced by Lead Plaintiff and took Lead Plaintiff's deposition. *See* Faruqi Decl. ¶¶28-29, 69.  Prior to the mediation session, the parties submitted mediation briefs that further detailed the merits of their positions. *See id.* ¶30.  During the mediation session, the parties extensively debated the strengths and weaknesses of Lead Plaintiff's claims and the defenses available to Defendants on an arm's-length basis. *See id.*  As a result of these contentious negotiations and the ensuing discussions, the parties were able to reach an agreement in principle to settle the Action.  *See id.* ¶¶30-31.  Thus, the parties entered into the Settlement with a comprehensive understanding of the potential risks and procedural hurdles facing further litigation of this Action.  *See Velti*, 2015 WL 468329, at *6 (finding that "[d]espite reaching settlement relatively early in the life span of this case, the Settling Parties have shown that their decision to settle was made on the basis of a thorough understanding of the relevant

11

facts and law[,]" even though settlement was reached prior to even the filing of a motion to dismiss). Therefore, this factor supports final approval.

### 5.   The Experience of Counsel Supports Final Approval

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  "When class counsel is experienced and supports the settlement, and the agreement was reached after arm's length negotiations, courts should give a presumption of fairness to the settlement." *Ramirez v. Ghilotti Bros. Inc.*, 2014 WL 1607448, at *1 (N.D. Cal. Apr. 21, 2014).

As set forth in detail in the Faruqi Firm's resume attached as Exhibit C to the Faruqi Declaration, Lead Counsel is a nationally-recognized law firm that has substantial experience litigating securities class action lawsuits.  *See* Faruqi Decl. ¶67.  The Faruqi Firm has also negotiated many substantial recoveries for classes across the country.  *See id.*, Ex. C.  The law firm representing Defendants, Fenwick & West LLP, is also an excellent firm that is nationally renowned for its securities litigation practice and the attorneys who litigated this Action have been involved in many securities class action lawsuits.  *See, e.g., id.* ¶68; Fenwick & West LLP, *About our Securities Litigation Practice*, https://www.fenwick.com/services/practices/pages/securities-litigation.aspx (last visited June 27, 2019).

Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and the likelihood of subsequent appellate proceedings even if Lead Plaintiff were to prevail against Defendants at trial, concluded that the settlement here is an excellent result for the Class.  Faruqi Decl. ¶¶32-40.  Thus, since "[b]oth Parties are represented by experienced counsel[,] . . . their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to [a] great deal of weight."  *Immune Response*, 497 F. Supp. 2d at 1174.

### 6.   The Reaction of the Class Supports Final Approval

"It is established that the absence of a large number of objections to a proposed class action

settlement raises a strong presumption that the terms of a proposed class [action settlement] are favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043. "[T]he willingness of the overwhelming majority of the class to approve the offer and remain part of the class presents at least some objective positive commentary as to its fairness." *Celera*, 2015 WL 7351449, at *7.

To date, a total of 53,950 copies of the Notice have been mailed to potential Class Members and nominees, and the Summary Notice was published in *Investor's Business Daily* and posted on *Globe Newswire* on May 20, 2019. *See* Epiq Decl. ¶¶2-9; Faruqi Decl. ¶¶8, 49. Despite this large number of potential Class Members, as of July 16, 2019, not one Class Member has objected to the Settlement, Plan of Allocation, or request for attorneys' fees and expenses. *See* Faruqi Decl. ¶54. As of July 12, 2019, the Claims Administrator has received only two requests for exclusions. *See* Epiq Decl. ¶15; Faruqi Decl. ¶54. One of the requests fails to identify the information required by the notice to validly request exclusion, including the dates, prices, and amounts of GoPro stock purchased during the Class Period. *See* Epiq Decl., Ex. C at Exclusion Request 1. The other request is from a shareholder who appears to have purchased only 58 shares during the Class Period. *See id.* at Exclusion Request 2. Thus, although the time for objections and exclusions has not yet expired, the reaction of the Class so far confirms the adequacy of the Settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (concluding, in a case where "zero objections and sixteen opt-outs (comprising 4.86% of the class) were made from a class of roughly . . . 329 members[,]" class members' reaction "strongly supports settlement[]").

### C.    The Proposed Settlement Is Fair, Adequate, and Reasonable Under The Recent Amendments to Rule 23(e)(2)

The amendments to Rule 23(e)(2) of the Federal Rules of Civil Procedure that became effective on December 1, 2018 provide additional factors for the Court to consider to determine whether a settlement is fair, reasonable, and adequate: (A) whether the class representatives and class counsel have adequately represented the class; (B) whether the proposal was negotiated at arm's length; (C) whether the relief provided for the class is adequate, taking into account specific considerations, including, *inter alia*, the costs, risks, and delay of trial and appeal; and (D) whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). As explained below, the

proposed Settlement meets all of Rule 23(e)(2)'s criteria, which significantly overlaps with the traditional Ninth Circuit factors that are discussed above. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *3-4 (N.D. Cal. Dec. 18, 2018) ("Recent amendments to Rule 23 require the district court to consider a similar list of factors[]" to those traditionally considered by the Ninth Circuit).

### 1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

Lead Plaintiff and Lead Counsel have adequately represented the Class throughout the litigation, and will continue to do so throughout the Settlement administration process. For one thing, Lead Plaintiff's interests are directly aligned with those of other Class members, as he claims to have suffered damages from the same alleged conduct, and through those claims seeks the same recovery from Defendants. *See* ECF No. 116 at 13-14 (explaining Lead Plaintiff's adequacy); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (providing that the adequacy of representation requires that "named plaintiffs and their counsel [not] have any conflicts of interest with other class members" and "prosecute the action vigorously on behalf of the class"). Additionally, Lead Plaintiff has been actively involved in the litigation at every step of the way, having, *inter alia*: (1) regularly reviewed filings in this Action and communicated with counsel about all aspects of the case; (2) responded to Defendants' discovery requests; (3) produced numerous documents in discovery; (4) sat for a full day deposition; and (5) approved the proposed Settlement. *See* Faruqi Decl., Ex. F; Fee Motion at 3, 13-15.[3] Furthermore, Lead Counsel has zealously represented the Class at all times and is highly experienced in securities class action litigation. *See* Fee Motion at 2-3, 7-8; ECF No. 116 at 14-16 (explaining Lead Counsel's adequacy). Accordingly, the Class has been adequately represented by Lead Plaintiff and Lead Counsel.

### 2. The Settlement Was Negotiated at Arm's Length

As discussed in Section I.A, *supra*, the Settlement was a result of arm's length negotiations between experienced counsel with the assistance of a well-respected mediator. Therefore, this factor supports final approval.

---

[3] All references to "Fee Motion" are to Lead Counsel's Motion for (1) an Award of Attorneys' Fees and Expenses and (2) an Award for Lead Plaintiff, filed herewith.

14

### 3.     The Relief Provided for the Class Is Adequate

This factor requires the court to determine whether the relief provided for the Class is adequate, taking four specific considerations into account.

The first consideration, whether the Settlement Amount is adequate when taking into account the costs, risks, and delay of trial and appeal, Fed. R. Civ. P. 23(e)(2)(C)(i), has already been addressed at length in Section I.B.1-2, *supra*, and weighs in favor of the proposed Settlement.

The second consideration is whether the proposed method of distributing relief to the class is effective, including the processing of class members' claims.  Fed. R. Civ. P. 23(e)(2)(C)(ii).  The Settlement provides a well-established method of distributing relief to the Class and processing claims. First, the Court-approved Notice and Proof of Claim and Release form provides potential Class members with instructions on how to submit their claims to the Claims Administrator and sets forth the applicable deadlines.  *See, e.g.*, Epiq Decl., Ex. A at 1-2.  Second, the Claims Administrator will process the claims submitted by potential Class members and confirm each Class Member's eligibility to participate in the Settlement by calculating their respective Recognized Loss as described in the Plan of Allocation.  *See* Epiq Decl., Ex. A at 9-12.  The Claims Administrator will then determine each Class member's *pro rata* share of the Net Settlement Fund.  *See id*.  After the claims-filing deadline has passed and the Claims Administrator has processed all of the claims, Class Counsel will file a motion with the Court seeking, *inter alia*, distribution of the Net Settlement Fund to Authorized Claimants.  Once distribution is approved, the Claims Administrator will send each Authorized Claimant their *pro rata* share of the Net Settlement Fund.  *See* Stipulation ¶5.6.  If any amount below $5,000 remains in the Net Settlement Fund after all feasible distributions are made to Authorized Claimants, it will be donated to the designated *cy pres* recipient, Investor Protection Trust.  *See* Stipulation ¶5.6; ECF No. 116 at 8 (explaining why Investor Protection Trust is an appropriate *cy pres* recipient for any unclaimed or non-distributable funds left in the Net Settlement Fund).  Lead Plaintiff respectfully submits that this method of distribution and claims processing is effective.  *See Hefler*, 2018 WL 6619983, at *7 (finding a similar method of distribution and claims-processing to be effective); *Becker v. Bank of New York Mellon Trust Co., N.A.*, 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) (finding that the "methods of distributing relief to the class and of processing class-

1  member claims are fair[]" where class members were required to submit a proof of claim listing their

2  relevant holdings and provide documentation to substantiate their holdings).

3      The third consideration, "the terms of any proposed award of attorney's fees," is discussed in

4  the Fee Motion and are fair and reasonable for the reasons discussed therein.  Fed. R. Civ. P.

5  23(e)(2)(C)(iii).

6      Finally, the fourth consideration requires the Court to determine the proposed Settlement's

7  adequacy in light of any agreements made in connection with it.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

8  The only such agreement is the parties' confidential Supplemental Agreement, which the Stipulation

9  explains gives "GoPro . . . the option to terminate the settlement in the event that Class Members

10  representing more than a certain percentage of GoPro securities subject to this settlement exclude

11  themselves from the Class[.]"  Stipulation ¶7.4.  This type of agreement is common in class actions and

12  does not render a settlement unfair.  *See Hefler*, 2018 WL 6619983, at *7 ("The existence of a

13  termination option triggered by the number of class members who opt out of the Settlement does not

14  by itself render the Settlement unfair.").

15              **4.    The Settlement Treats Class Members Equitably Relative to Each Other**

16      As discussed in Section II below, the Plan of Allocation provides that Authorized Claimants

17  will receive their *pro rata* share of the Net Settlement Fund based on their Recognized Losses.  Thus,

18  the proposed Settlement treats members of the Class equitably relative to each other.  *See Hefler*, 2018

19  WL 6619983, at *8 (finding that the settlement treated class members equitably where those "who

20  submit timely claims will receive payments on a *pro rata* basis based on the date(s) class members

21  purchased and sold [the Company's] shares as well as the total number and amount of claims filed[]").

22  Lead Plaintiff's request for a service award does not change this conclusion.  *See* Fee Motion at 13-15;

23  *Hendricks v. StarKist Co.*, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015) ("The Ninth Circuit has

24  recognized that service awards to named plaintiffs in a class action are permissible and do not render a

25  settlement unfair or unreasonable.").

26  **II.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE**

27      The Court has broad discretion in approving a plan of allocation.  "Approval of a plan of

28  allocation of settlement proceeds in a class action under FRCP 23 is governed by the same standards of

16

review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Am. Apparel, Inc. Shareholder Litig.*, 2014 WL 10212865, at *18 (C.D. Cal. July 28, 2014). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015).

In developing the Plan of Allocation, Lead Plaintiff enlisted the help of a damages consultant who was familiar with the various damages issues in this Action as well as the Claims Administrator which has many years of experience implementing plans of allocation in securities class actions. *See* Faruqi Decl. ¶¶59-60. The Plan of Allocation's objective is to distribute a *pro rata* share of the Net Settlement Fund to Authorized Claimants based upon their claimed losses consistent with the SAC's allegations. *See id.* ¶58. Specifically, after Authorized Claimants submit their Proof of Claim forms and supporting documentation, the Claims Administrator will calculate each Authorized Claimants' Recognized Loss according to a formula that will take into account when and at what price they purchased GoPro common stock and when such stock was sold. *See id.* ¶59. In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have purchased common stock during the Class Period and held their stock through at least one of the corrective disclosures set forth in the SAC and the Plan. *See id.* ¶59. The amount recovered per share will vary depending upon when in relation to the series of corrective disclosures each share was sold. *See id.* Authorized Claimants cannot recover more than their out-of-pocket losses. Thus, "the plan allocates the settlement fund proportional to the actual injury of each class member. Accordingly, the plan of allocation is fair, reasonable and adequate." *Axesstel*, 2015 WL 6458073, at *7; *see also Heritage*, 2005 WL 1594403, at *11 ("[A] plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

The terms of the Plan of Allocation were fully disclosed in the Settlement Notice that was mailed to 53,950 potential Class Members and nominees and posted on the Action's website. *See* Epiq Decl. ¶¶2-9, 14, Ex. A; Faruqi Decl. ¶61. To date, there have been no objections to the Plan. *See*

1  Faruqi Decl. ¶61.  Thus, for the reasons set forth herein and in the Faruqi Declaration, Lead Plaintiff

2  respectfully requests that the Court approve the Plan of Allocation as fair, reasonable, and adequate.

3  **III.    THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS**

4          Notice of a class action settlement must meet the requirements of Rule 23 of the Federal Rules

5  of Civil Procedure, the PSLRA, and the due process clause of the United States Constitution.  Rules

6  23(c)(2)(B) and 23(e)(1) require the Court to direct to potential settlement class members "the best

7  notice that is practicable under the circumstances" and "in a reasonable manner."  The PSLRA and the

8  due process clause impose similar requirements.

9          The Court preliminarily approved the form, content, and method of dissemination of the

10  Notices provided to potential Class Members.  *See* Faruqi. Decl. ¶47, Ex. A.  Pursuant to the

11  Preliminary Approval Order, the Notice and Proof of Claim and Release form have been mailed to

12  53,950 potential Class Members and nominees beginning on May 14, 2019.  *See* Epiq Decl. ¶¶2-8;

13  Faruqi Decl. ¶49.  That same day, the Notice and Proof of Claim and Release form were also made

14  available on the settlement website, along with the Stipulation and its exhibits, Lead Plaintiff's motion

15  for preliminary approval, and the Preliminary Approval Order.  *See* Epiq Decl. ¶14; Faruqi Decl. ¶51.

16  The Summary Notice was published in *Investor's Business Daily* and posted by *Globe Newswire* on

17  May 20, 2019.  *See* Epiq Decl. ¶9; Faruqi Decl. ¶49.   Additionally, Epiq has set up a toll-free

18  telephone helpline to accommodate potential Class Members who have questions regarding the

19  Settlement.  *See* Epiq Decl. ¶¶10-13; Faruqi Decl. ¶50.

20          Pursuant to the requirements of Rule 23, the due process clause, and the PSLRA, the Settlement

21  Notice included: (i) the case caption; (ii) a description of the Action's claims; (iii) a description of the

22  settlement Class; (iv) the names of counsel for the settlement Class; (v) the maximum amount of

23  attorneys' fees, expense reimbursement, and the compensatory award for Lead Plaintiff that will be

24  sought; (vi) the Settlement Hearing date; (vii) a description of the settlement Class Members'

25  opportunity to appear at the hearing; (viii) a statement of the deadline for filing objections to and

26  exclusions from the settlement; (ix) the consequences of exclusion; (x) the consequences of remaining

27  in the settlement Class; and (xi) the manner in which to obtain more information.  *See* Epiq Decl., Ex.

28  A; Faruqi Decl. ¶52.

1   Courts in this Circuit have routinely found that this method of mailing, publication, and Internet

2   notice satisfies the applicable notice standards in similar class actions. *See Celera*, 2015 WL 7351449,

3   at *5 (finding a similar notice plan appropriate). Thus, Lead Plaintiff respectfully requests that the

4   Court find the notice program satisfies the requirements of Rule 23, the PSLRA, and due process.

5   **IV.     THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES**

6          Pursuant to the Preliminary Approval Order, the Court conditionally certified the Class for

7   Settlement Purposes. *See* ECF No. 124 at ¶¶2-4. Since the entry of that Order, no circumstances have

8   changed to alter the propriety of the Court's certification and appointments. *See In re Bear Stearns*

9   *Cos.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally certifying a settlement class where there had

10  been no material changes since the court preliminarily certified the class). Thus, pursuant to Rules

11  23(a) and (b)(3), and for reasons set forth below and in further detail on pages 11 to 16 of the

12  Preliminary Approval Motion, Lead Plaintiff respectfully requests that the Court finally certify the

13  following Class for purposes of Settlement:

14          All Persons and entities who purchased GoPro common stock between September 19,
        2016 and November 8, 2016, inclusive, and were damaged thereby. Excluded from the
15      Class are (i) the Defendants; (ii) members of the immediate families of any Individual
        Defendant; (iii) any firm, trust, partnership, corporation or entity in which a Defendant or
16      an immediate family member of any Individual Defendant has a controlling interest; (iv)
        the directors and officers of GoPro at all relevant times; and (v) the legal representatives,
17      heirs, successors-in-interest or assigns of such excluded persons. Also excluded from the
        Class are those Persons who timely and validly request exclusion from the Class.
18

19  Stipulation ¶1.3. Lead Plaintiff also respectfully requests that the Court appoint Troy Larkin as Class

20  Representative and the Faruqi Firm as Class Counsel.

21                                      **CONCLUSION**

22          For the reasons stated above, Lead Plaintiff respectfully requests that this Court: (a) grant final

23  approval of the proposed Settlement; (b) certify the proposed settlement Class and appoint Lead

24  Plaintiff as settlement Class Representative and the Faruqi Firm as settlement Class Counsel; and (c)

25  grant approval of the Plan of Allocation.

26

27   Dated: July 16, 2019                    Respectfully submitted,

28                                           By: */s/ Richard W. Gonnello*

19

1

Richard W. Gonnello

2

Richard W. Gonnello (*pro hac vice*)
Katherine M. Lenahan (*pro hac vice*)

3

Sherief Morsy (*pro hac vice*)
**FARUQI & FARUQI, LLP**

4

685 Third Avenue, 26th Floor
New York, NY 10017

5

Telephone: 212-983-9330
Facsimile: 212-983-9331

6

Email: rgonnello@faruqilaw.com
        klenahan@faruqilaw.com

7

        smorsy@faruqilaw.com

8

Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**

9

10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024

10

Telephone: 424-256-2884
Facsimile: 424-256-2885

11

Email: bheikali@faruqilaw.com

12

*Attorneys for Lead Plaintiff Troy Larkin*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEAD PLAINTIFF'S FINAL APPROVAL MOTION No. 4:16-CV-06654-CW